CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 2 8 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| TAMMY R. FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07cv019 |
| | ) | |
| W. PAT JUSTUS, et al., | ) By: | Michael F. Urbanski |
| | ) | United States Magistrate Judge |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tammy R. Fields ("Fields") filed this action pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendment to the United States Constitution. Fields alleges that she was not hired for the position of Director of Buchanan County Department of Social Services ("Director") because of her affiliation with the Republican Party, in violation of the First Amendment to the United States Constitution. Fields brings this action against Buchanan County; the members of its Board of Supervisors, W. Pat Justus, Carroll Branham, Eddie Lindsay, David Ratliff, and William P. Harris, in their individual capacities, which group will be referred to herein collectively as "Supervisors;" the Board of the Buchanan County Department of Social Services, Tolbert Prater, Laura Elkins, Emogen Elswick, Ruby Ratliff Hale, and Harold Thornsbury, in their individual capacities, which group will be referred to herein collectively as "DSS Defendants;" and the current Director of Buchanan County Department of Social Services, Judy Holland.

Each group of defendants[1] filed a motion to dismiss alleging, inter alia, that they are entitled to qualified immunity. An order was entered on June 20, 2007, allowing the parties ninety days to conduct limited discovery on the issue of qualified immunity. (Dkt. # 48) By order entered on

---

[1] Buchanan County joins Supervisors in their motion to dismiss. Similarly, Judy Holland joins DSS Defendants in their motion to dismiss.

September 18, 2007, the court extended the discovery deadlines from the June 20, 2007 order by an additional thirty days, to October 18, 2007, with an additional thirty days to conduct cross-examination of the affiants if necessary. (Dkt. #57)

The parties engaged in written discovery on the issue of qualified immunity through the end of September, 2007. Fields filed a motion for partial summary judgment on October 18, 2007, which included affidavits from Tony Fritz and Tammy Fields. (Dkt. #61) Supervisors submitted sworn discovery responses and other documents on the issue of qualified immunity four days later, on October 22, 2007. (Dkt. #62) Supervisors filed a brief in opposition to Fields' motion for summary judgment on November 6, 2007. (Dkt. #67) On November 7, 2007, DSS Defendants filed a motion for an extension of time to respond to Fields' motion for summary judgment, asserting that they would rely on the authorities cited in support of their timely filed motion to dismiss and would adopt the legal arguments and authorities cited in Supervisors' brief in opposition filed on November 6, 2007. (Dkt. #68) Furthermore, DSS Defendants assert that they will not submit any further legal argument or evidence on the partial motion for summary judgment.

By order entered January 30, 2008, Supervisors' and DSS Defendants' motions to dismiss and Fields' Motion for partially summary judgment were referred to the undersigned for Report and Recommendation. The undersigned recommends that the court **DENY** DSS Defendants' motion to dismiss (Dkt. # 38), **DENY** Supervisors' motion to dismiss (Dkt. # 39), **GRANT** Buchanan County's motion to dismiss (Dkt. # 39), and **GRANT** Fields' motion for partial summary judgment on the defense of qualified immunity (Dkt. # 61).

## I.

The facts of this case are largely undisputed. At all times relevant to this action, Fields was employed by the Buchanan County Department of Social Services ("BCDSS"). The Buchanan

2

County Board of Supervisors ("BCBS") consisted of W. Pat Justus, Carroll Branham, Eddie Lindsay, William P. Harris and David Ratliffe. The Administrative Board of the Buchanan County Department of Social Services ("LBDSS") consisted of Tolbert Prater, Harold Thornsbury, Laura Elkins, Emogene Elswick and Ruby Ratliff Hale. The Director of the Buchanan County Department of Social Services is Judy Holland ("Holland") who was hired on or about January 2007. Fields alleges that she was not hired for the position of Director because of her affiliation with the Republican Party and that Judy Holland was hired for the position in her stead because of her affiliation with the Democratic Party.

Fields began her employment with BCDSS as a social worker in 1995. In 1997, Fields recieved a promotion to the position of Office Manager. Harold McClanahan, the previous Director of BCDSS, retired in 2006, thereby opening the position of Director to applicants. Seven applicants, including Holland and Fields, applied for the position of Director. The BCBS assembled an interviewing board to interview the prospective candidates. The interviewing board ranked each candidate based on their application and interview and Holland ranked the lowest while Fields ranked highest. These rankings were submitted to the BCBS along with the applications for employment.

Fields alleges that after the interviewing board submitted its recommendations to the BCBS, they decided to create the LBDSS and appointed the DSS defendants to that local board. The LBDSS interviewed three applicants, Holland, Fields, and Brenda Jackson before hiring Holland as the new Director.

Fields alleges that the LBDSS hired Holland both because of Holland's political affiliation with the Democratic Party and Fields' affiliation with the Republican Party. Fields had been an active member of the Republican Party in Buchanan County for a number of years preceding the

3

hiring decision and alleges that both Supervisors and DSS Defendants were aware of her political affiliation prior to the decision to hire Holland. Fields also alleges that she advocated and supported the Republican Party in the public domain, an activity protected by the First Amendment, and ultimately, this was the reason that she was not hired as the new Director.

Fields also asserts that Holland was affiliated with the Democratic Party. Further, Fields alleges that her party affiliation was well-known to both Supervisors and DSS Defendants, who shared the same political affiliation.[2] According to Fields, BCBS intentionally appointed members of the Democratic Party to LBDSS so that Fields would not be hired for the position of Director. Fields alleges that Holland was hired as the new Director based on her shared political affiliation with the other defendants.

## II.

Both Supervisors and DSS Defendants filed motions to dismiss. In their motion to dismiss, DSS Defendants argue that Fields fails to state a claim for which relief may be granted and therefore dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6).[3] For the purposes of this motion, DSS Defendants do not contest Fields' allegations but argue that they are entitled to qualified immunity and are therefore protected from liability. DSS Defendants assert that the position of Director of the Buchanan County Department of Social Services is a policymaking position which allows them to consider party affiliation in hiring the Director.

---

[2] Defendant Eddie Lindsay, a member of the BCBS, was affiliated with the Democratic Party as a district supervisor, but subsequently ran as an independent.

[3] Because of the limited discovery on the issue of qualified immunity, the parties have presented to the court matters outside of the pleadings. As such, Defendants' motions to dismiss must be considered as motions for summary judgment under Fed. R. Civ. P. 56.

4

Supervisors argue that they should be dismissed as defendants in this case because Fields has failed to state a claim against them for which relief may be granted. Supervisors allege that, at most, they appointed the member of LBDSS which in turn actually hired Holland. Supervisors contend that they should be dismissed because their actions in appointing the LBDSS were authorized by Virginia law and that they did not "actively, directly and forcefully [promote] in a very partisan manner appointing another employee as local director in such a way that the [LBDSS] members consider themselves with no choice except that being forced or pressed upon them by the Board of Supervisors members." (Dkt. # 39)

Defendant Buchanan County argues that it should be dismissed from this case because it cannot be held liable under 42 U.S.C. § 1983 for the decision to hire a director for the local Department of Social Services. Buchanan County asserts that Bockes v. Fields, 999 F.2d 788 (1993), controls this action and mandates dismissal of this defendant.

### III.

Upon a motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

For a plaintiff to state a claim under 42 U.S.C. § 1983, she must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The First and Fourteenth Amendments to the United States Constitution protect employees from adverse employment decisions based solely on their political affiliations. Elrod v.

Burns, 427 U.S. 347, 360 (1976) (holding that dismissals based on political patronage violate the First and Fourteenth Amendments because they limit freedom of belief and association, but creating a narrow exception for policymaking positions); Branti v. Finkel, 445 U.S. 507, 518 (1980) (upholding the decision in Elrod but modifying the policymaking exception to whether there is a rational connection between shared ideology and job performance). This protection extends to decisions to hire or terminate employees, as well as to any other adverse employment action. See Rutan v. Republican Party of Ill., 497 U.S. 62, 79 (1990) ("We hold that the rule of Elrod and Branti extends to promotion, transfer, recall, and hiring decisions based on party affiliation and support").

This First Amendment protection, however, is not absolute. If conditioning the retention, promotion, or hiring of "public employment on the employee's support of the in-party is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must be outweigh the loss of constitutionally protected rights." Elrod, 427 U.S. at 560-61. Therefore, if a public employer "can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved," the First Amendment will not operate to bar employment decisions based on political patronage. Branti, 445 U.S. at 518. The relevant inquiry turns on whether the public employee's private political beliefs would interfere with the discharge of her public duties. Id. at 517. In such a case, the government's "interest in maintaining governmental effectiveness and efficiency" would outweigh the employee's First Amendment rights. Id. One such interference, which may justify patronage dismissals in policy-making positions is "obstructing the implementation of policies of the new administration." Elrod, 427 U.S. at 367. As the Supreme Court in Elrod noted, "[n]o clear line can be drawn between policymaking and nonpolicymaking positions." Id. Four years later, the Branti Court modified the Elrod test, noting "that party

6

affiliation is not necessarily relevant to every policymaking position." Branti, 445 U.S. at 518. The Branti Court focused the analysis on "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Id.

DSS Defendants argue that they are entitled to qualified immunity because the position for which they hired Holland is a policymaking position, and thus the decision not to hire Fields based on her political affiliation did not violate her First Amendment rights. Qualified immunity serves to protect a government official from liability in her individual capacity in performing discretionary tasks "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Thus, a court considering qualified immunity must first determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the government official violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If this initial showing is made, the court must next determine whether the contours of the right were clearly established at the time of the alleged violation. Id.

Fields alleges that DSS Defendants violated her First and Fourteenth Amendment rights by not hiring her for the position of Director based on her political affiliation. DSS Defendants argue that the position of local Director of the Buchanan County Department of Social Services is a policy-making position, thereby justifying the use of political party affiliation in making the decision not to hire Fields. As such, DSS Defendants argue that Fields has not alleged a First Amendment violation. Further, DSS Defendants argue that even if Fields has alleged a violation of her First Amendment rights, the right alleged was not clearly established at the time of the alleged violation, thereby entitling DSS Defendants to qualified immunity from this suit. The undersigned, however, finds this argument to be without merit and recommends denying DSS Defendants' motion.

DSS Defendants argue that the Fourth Circuit's opinion in Jenkins v. Medford, 199 F.3d 1156, (4th Cir. 1997), is controlling in this matter and instructs that policymaking positions fall within the exception to prohibited political patronage employment decisions. The undersigned agrees that the Jenkins decision is binding precedent on this court, but finds DSS Defendants' analysis to be incomplete and inaccurate. DSS Defendants rely on the following language from Jenkins to support their proposition: "[w]hen the position at issue resembles a policymaker, a communicator, or a privy to confidential information, political party affiliation can be an appropriate requirement for effective job performance. The position then falls into the Elrod-Branti exception to the prohibition against political firings." Jenkins, 199 F.3d at 1162. The language cited by DSS Defendants fails to account for the entirety of the test used by the Jenkins court. The court in Jenkins delineated the proper application of the Elrod-Branti test for the Fourth Circuit, stating that the

> court must first determine whether the position held by the dismissed employee relates to partisan political interests. If the position does relate to those interests, the court must then examine the particular responsibilities of the position. When the position at issue resembles a policymaker, a communicator, or a privy to confidential information, political party affiliation can be an appropriate requirement for effective job performance. The position then falls into the Elrod-Branti exception to the prohibition against political firings.

Id. Thus, the court should determine whether the position even relates to partisan political interests before making the inquiry into whether the position is a policymaking position. In this matter, DSS Defendants fail to establish that the Director bears any relation to partisan political interests, relying instead on their argument that the position is a policymaking position. It is clear, however, that this argument circumvents the threshold inquiry and prematurely advances to the second prong of the Jenkins test. Because DSS Defendants have not shown that the position of Director relates to

8

partisan political interests, the undersigned recommends denying DSS Defendants' motion to dismiss and for summary judgment.

Even if DSS Defendants made the requisite threshold showing that the position of Director does relate to partisan political interests, their argument that the position of Director, as a policy-making position, is exempted from the general prohibition on political patronage decisions also fails. As support for their argument that the Director of the Buchanan County Department of Social Services is a policymaking position and thus excluded from First Amendment protections, DSS Defendants attached a document entitled "Class Specification" from the Virginia Department of Social Services which outlines the general character, scope of duties and responsibilities of the Director. (Dkt. # 38, Ex. 1) The Class Specification directs that the "Director has full responsibility for planning, organizing, setting objectives, formulating Policies, directing and evaluating benefits programs and service programs according to federal and state legislation, rules, regulations, and local policies." It is this language that DSS Defendants rely on to further their argument that the Director is a policymaking position. DSS Defendants merely lift the phrase "formulating Policies" from the Class Specification as conclusive evidence that the position of Director is a policymaking position, thus entitling them to consider political party affiliation in making hiring decisions. This analysis, however, is again incomplete and inaccurate under the modified Elrod test, as delineated by Branti.

As noted above, Branti modified the relevant inquiry to "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518. Simply stating that the position of Director is a policymaking position based on the language from the Class Specification is insufficient to show that party affiliation is an appropriate requirement for the effective performance of the public office involved. As the Branti court eloquently remarked "[t]he coach of a state university's football team

9

formulates policy, but no one could seriously claim that Republicans make better coaches than Democrats, or vice versa, no matter which party is in control of the state government." Id. at 518. Here, DSS Defendants have done nothing more than point to language in the Class Specification about the formulation of policies.

The Class Specification goes on to delineate duties routinely performed by the Director, and the undersigned finds these duties instructive on "whether party affiliation is an appropriate requirement for the effective performance of the public office involved." Id. A review of the duties routinely performed by the Director makes it clear that the "policies" relied on by DSS Defendants relate to management of the office as opposed to policies where political party affiliation would hinder or aid effective job performance. Further, under the Branti test, the onus is on DSS Defendants, as the hiring authority, to demonstrate that "party affiliation is an appropriate requirement for the effective performance of the public office involved." Id. DSS Defendants' reliance on the language from the Class Specification is insufficient to make this requisite demonstration. Because DSS Defendants fail to show that the position of Director relates to partisan political interests and fail to show that the Director is the type of policymaking position contemplated by Branti, Fields has sufficiently alleged a violation of her First Amendment rights, thus satisfying the first prong of the qualified immunity inquiry.

Next, the undersigned must determine whether the contours of Fields' First Amendment rights were well-established at the time of the alleged violation. DSS Defendants argue that "[p]ublic officials are not expected to resolve subtle constitutional questions, as they 'are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). DSS Defendants argue that the case law, both from the Supreme Court and the Fourth Circuit, have

10

formulated standards that are less than precise in determining when political patronage can be appropriately utilized in employment decisions. In Elrod, the Court noted that "[n]o clear line can be drawn between policymaking and nonpolicymaking positions." 427 U.S. at 367. The Branti Court's modification of the Elrod test requires an inquiry into the relationship between political party affiliation and the public office involved in each case. While no bright-line rule exists for the broad area of political patronage employment decisions, the facts of the particular employment at issue in this case make clear that the contours of the right were clearly established at the time of the alleged violation.

There are three crucial items of evidence which establish conclusively that Fields' First Amendment rights were clearly established at the time of the alleged violation. Critical to the analysis is an understanding of the regulatory scheme of the Virginia Department of Social Services ("VDSS"). The VDSS formulates policies that are applicable to all local jurisdictions, including the BCDSS. See Bockes v. Field, 999 F.2d 788, 789-90 (4th Cir. 1993). The BCDSS is overseen by the VDSS, which operates through a Regional Director of Social Services.

In support of her motion for partial summary judgment, Fields attached an affidavit from Tony Fritz ("Fritz"), the VDSS Regional Director responsible for Buchanan County. Fritz's affidavit has not been refuted or contested by any evidence submitted by Defendants. In his affidavit, Fritz asserts that he is "aware of no relationship between political party affiliation and the effective performance of a local Director of DSS. The duties and responsibilities of a local Director do not contain any reference to political party ideologies." (Pl's Mot. For Partial Summ. J., Ex. 1). As such, the only evidence before the court is that political party affiliation has no bearing on the effective performance of the duties of the local Director.

11

Additionally, the VDSS issues a Local Board Member Handbook ("Handbook") that exhaustively covers the duties and responsibilities of any Local Board of Social Services in Virginia. Chapter Seven of the Handbook outlines VDSS's policy as it pertains to equal employment opportunity and affirmative action. VIRGINIA DEPARTMENT OF SOCIAL SERVICES, LOCAL BOARD MEMBER HANDBOOK, 63-67 (2007). Specifically, "[b]oard members of local departments . . . share in the task of ensuring that equal employment opportunity is extended to all employees and applicants for employment of local social services agencies. This is not a responsibility that can be delegated." Id. Further, the Handbook makes clear that employment decisions must be "based solely on individual merit and fitness of applicants and employees related to specific jobs and without regard to race, color, religion, sex, age, national origin, physical disability, **political affiliation**, or other non-merit factors." Id. (emphasis added). Fritz's affidavit states that the Handbook "specifically prohibits the LBSS to base any employment decision on political party affiliation, including the position of Director" and the handbook plainly so provides. (Pl's Mot. For Partial Summ. J., Ex. 1). Clearly, the decision to hire the Director of the BCDSS cannot be based on political affiliation under the standards specifically promulgated by the VDSS for the local board to use as set forth in the Handbook, which must be followed by the LBDSS. Bockes, 999 F.2d at 789.

In his affidavit, Fritz asserts that each member of the LBDSS is provided a copy of the Handbook. Further, local board members are charged with annually reviewing the Handbook "with particular emphasis on affirmative action and equal employment opportunity." VIRGINIA DEPARTMENT OF SOCIAL SERVICES, LOCAL BOARD MEMBER HANDBOOK, 65 (2007). Fritz states that, pursuant to unequivocal language in the Handbook, the LBDSS must be "aware of, responsible for, and fully supportive" of the local agency's equal employment opportunity and affirmative action

plan. Id. Accordingly, each member of the LBDSS knows or should know that the decision to hire the local Director cannot be based on political party affiliation under the guidelines in the Handbook.

Also highly probative in this matter is the application for employment filled out by anyone seeking employment with Virginia, including applicants for Local Director of Social Services and specifically filled out by Fields in this case. The very top of the application for employment reads "[e]mployees of the Commonwealth [of Virginia] and applicants for employment shall be afforded equal opportunity in all aspects of employment without regard to race, color, religion, **political affiliation**, national origin, disability, marital status, gender or age." (emphasis added) Fields' application of employment contained this language and was submitted to DSS Defendants prior to their decision to hire Holland. Thus, from the very text of the employment application at issue in this case, clearly DSS Defendants should have known that they could not consider political affiliation when making the decision to hire the new director. Therefore, DSS Defendants are not entitled to qualified immunity in this case because Fields has alleged a violation of her First Amendment rights by DSS Defendants who knew or should have known such right existed at the time of the violation. Therefore, the undersigned recommends that the court **DENY** DSS Defendants' motion to dismiss and for summary judgment on the basis of qualified immunity.

Supervisors likewise argue that the position of Director is a policymaking position and thus exempt from the prohibition against political patronage employment decisions. The reasoning set forth above on this issue is equally applicable to Supervisors. As such, the undersigned recommends that the court **DENY** Supervisors' motion to dismiss and for summary judgment on the issue of qualified immunity. For the same reasons, the undersigned recommends that the court **GRANT** Fields' motion for partial summary judgment on the defense of qualified immunity.

13

Case 1:07-cv-00019-NKM-mfu Document 84 Filed 02/28/08 Page 13 of 18 Pageid#: 564

## IV.

Supervisors also argue that they should be dismissed from this action because Fields has failed to allege any conduct on their part that violated her First Amendment rights. Supervisors argue that all they did was appoint the members of the LBDSS pursuant to lawful authority, and that it was the LBDSS, and not Supervisors, who appointed Holland instead of Fields. Fields alleges that Supervisors created the LBDSS and specifically appointed certain individuals for the express purpose of hiring Holland instead of Fields because of their respective party affiliations. (Compl. 5) At this stage in the litigation, the undersigned recommends denying Supervisors' motion because viewing the facts and the inferences to be drawn from those facts in the light most favorable to Fields, she has sufficiently stated a claim against Supervisors.

Supervisors argue that under Va. Code 63.2-215 the governing body of a county is directed "to appoint either a local government official or a local board consisting of residents of the county." Va. Code 63.2-302. In turn, the local board is charged with appointing the local director of the Department of Social Services. See Va. Code 63.2-325 ("the local director shall be appointed by the local board"). Here, Supervisors acted pursuant to Virginia law in appointing the LBDSS which subsequently hired Holland.

In Sales v. Grant, 158 F.3d 768 (4th Cir. 1998), the plaintiff alleged that she was terminated from her position as assistant registrar based on her political affiliation. Id. at 770. There, assistant registrars were hired or terminated by the registrar who, in turn, was appointed by the local electoral board. Id. at 771. In Sales, the plaintiff brought suit against the local electoral board alleging that they caused the newly appointed registrar to terminate her. Id. Because the registrar, and not the local electoral board, was charged with the employment decisions of the assistant registrars the trial

14

court dismissed the claims for failure of proof and did not allow the issue go to the jury. Id. at 770. The Fourth Circuit overturned the trial court's decision and remanded the case for a new trial, finding that the conduct of the local electoral board in influencing the employment decisions made by the newly appointed registrar was sufficient to hold them liable under § 1983. Id. In so doing, the Fourth Circuit noted that the 42 U.S.C. § 1983 "causation language, 'subject or cause to be subjected,' imposes liability not only for conduct that directly violates a right but for conduct that is the effective cause of another's direct infliction of the constitutional injury." Id. at 776 (quoting 42 U.S.C. § 1983). The court held that the "principle of effective causation by indirect means, grounded in the literal language of *section 1983* and in general tort law" is indisputably applicable to § 1983 patronage actions. Id. (quoting 42 U.S.C. § 1983).

Supervisors attempt to distinguish this case from Sales v. Grant, 158 F.3d 768 (4th Cir. 1998), by arguing that they cannot be held liable for the ultimate decision to hire Holland. Supervisors distinguish Sales, because in Sales specific evidence was presented at trial showing that the local electoral board influenced the registrar they appointed to terminate the assistant registrars. Id. at 772-74. Supervisors argue that unless Fields can demonstrate that their conduct rose to the level of the local electoral board in Sales, they should be dismissed from this case. The well-developed facts of Sales, however, occurred after an entire trial. As noted above, at this stage in the litigation the court must take all facts alleged by Fields as true. Fields alleges that Supervisors appointed certain members to the LBDSS for the specific purpose of hiring Holland instead of Fields because of the members' respective political affiliation. The reasonable inference taken from this allegation is that Supervisors explicitly appointed certain individuals to the LBDSS for the express purpose of not hiring Fields because of her political affiliation. While Supervisors' argument that the members of the LBDSS are not "passive, dependent, unknowing - conduits" of Supervisors may

15

bear out after discovery is completed, at this time Fields' allegations are sufficient to proceed. (Mot. To Dismiss, Dkt. # 39). Therefore, the undersigned recommends denying Supervisors' motion at this time.

## V.

Defendant Buchanan County argues that it should be dismissed from this case because it cannot be held liable under <u>Bockes</u>. 999 F.2d 788 (4th Cir. 1993). In <u>Bockes</u> the court considered whether Grayson County could be held liable for the decision to fire the local director of Social Services. The court looked to <u>Monell v. Department of Social Services</u>, 436 U.S. 658, (1978) for the proposition that "a county may be liable for acts done pursuant to its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" <u>Bockes</u>, 999 F.2d at 791 (quoting <u>Monell</u>, 436 U.S. at 694). For Buchanan County to be held liable in this case Fields would have to demonstrate that Buchanan County has an official policy which mandates considering political party affiliation in hiring decisions. Fields' allegation against Buchanan County is that it is:

> a county government in Virginia and is responsible for the hiring and employment of county employees, including the Director of the DSS. Buchanan County is liable for acts committed that occur pursuant to custom, policy and practice. At all times relevant to this proceeding, W. Pat Justus, Carroll Branham, Eddie Lindsay, William P. Harris and David Ratliff were the policymakers for Buchanan County, and as such, their actions with respect to the claims of Fields in this Complaint are the product of the custom, policy and practice of Buchanan County.

(Compl. at 2)

In <u>Bockes</u>, the Fourth Circuit held that Grayson County could not be held liable for the employment decisions of the Grayson County Board of Social Services. 999 F.2d at 791. The court focused on the relationship between the government of the Commonwealth of Virginia and the

16

Grayson County Board of Social Services in making social services personnel decisions by stating that:

> In Virginia, neither the County nor the local boards have the authority to set "general goals and programs" for social services personnel; that authority is reserved for the State Board. . . . The State Board has wielded this authority by publishing a comprehensive personnel handbook, which the local boards must follow. Among other things, this handbook requires the local boards to apply merit criteria in their personnel decisions.

Id. Grayson County was dismissed from the case because of the "bounded, state-conferred discretion" in personnel decisions which "is not the policymaking authority for which a county may be held responsible under § 1983." Id. (internal quotations omitted). Given the holding in Bockes, coupled with Fields' failure to allege with specificity any possible Buchanan County policy which dictates hiring employees based on political patronage, the undersigned recommends dismissing Buchanan County from this action.

## VI.

The Clerk is directed to immediately transmit the record in this case to the Honorable Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

Enter this 28th day of February, 2008.

*/s/ Michael F. Urbanski*
Michael F. Urbanski
United States Magistrate Judge