IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| TAMMY R. FIELDS,<br><br>*Plaintiff,*<br><br>v.<br><br>W. PAT JUSTUS, ET AL.,<br><br>*Defendants.* | CIVIL NO. 1:07cv00019<br><br>MEMORANDUM OPINION and ORDER<br><br>JUDGE NORMAN K. MOON |

On January 30, 2008 I referred this matter to the Honorable Michael F. Urbanski, United States Magistrate Judge, for a report and recommendation ("Report") on the pending motions. On February 28, 2008 Judge Urbanski issued his Report, in which he recommends that I grant Buchanan County's motion to dismiss, deny all other motions to dismiss, and grant Plaintiff's motion for partial summary judgment on the defense of qualified immunity.

On March 10, 2007 Defendants Tolbert Prater, Laura Elkins, Emogene Elswick, Ruby Ratliff Hale, Harold Thornsbury, and Judy Holland timely filed objections to the Report. On March 13, 2007 the same defendants timely filed supplemental objections.[1] On March 17, 2008 Defendants Buchanan County, W. Pat Justus, Carrol Branham, Eddie Lindsay, David Ratliff, and William P. Harris filed their objections to the Report.[2] Pursuant to 28 U.S.C. § 636(b)(1) I am obligated to review *de novo* those portions of the Report to which objection is made. After a

---

[1] Plaintiff argues that the supplemental objections are untimely. The Report was docketed on February 28, 2008, a Thursday. Pursuant to Federal Rule of Civil Procedure 6, "the day of the act, event, or default from which the designated period of time begins to run shall not be included." The clock therefore began to run on Friday, February 29, 2008. Furthermore, "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation." Fed. R. Civ. Pro. 6. Excluding the intermediate Saturdays and Sundays, the ten day objection period expired on Thursday, March 13, 2008, the day the supplemental objections were filed. Therefore, the supplemental objections were timely filed.

careful review of the Report, Defendants' objections, Plaintiff's responses, the applicable law, and the documented record, I adopt the Magistrate Judge's recommended disposition. Accordingly, Plaintiff's Motion for Partial Summary Judgment on the issue of qualified immunity is GRANTED, Buchanan County's Motion to Dismiss is Granted,[3] and Defendants' motions to dismiss are DENIED.

## I. BACKGROUND

Plaintiff Tammy R. Fields alleges she was not hired for the position of Director of the Buchanan County Department of Social Services ("Director") on the basis of her affiliation with the Republican Party in violation of the First Amendment to the United States Constitution.[4] Plaintiff brings this action against Buchanan County, Virginia, certain named members of the Buchanan County Board of Supervisors ("Board of Supervisors") in their individual capacities, certain named members of the Local Board of the Buchanan County Department of Social Services ("Local Board") in their individual capacities, and the current Director of the Buchanan County Department of Social Services, Judy Holland.[5]

Defendants have filed two motions to dismiss (docket nos. 29 and 32) alleging, *inter alia*, qualified immunity. Plaintiff has filed a motion for partial summary judgment on the issue of qualified immunity (docket no. 60).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(d) permits a court to grant summary judgment on specific issues as to which there remain no genuine issues of material fact. Fed. R. Civ. P. 56(d).

---

[2] Defendants received leave from the Court to file their objections beyond the ten-day objections deadline.
[3] There have been no objections to Judge Urbanski's recommendation that Buchanan County be dismissed.
[4] A more detailed factual background is contained in Judge Urbanski's Report.
[5] The Report states incorrectly that all of the members of the Buchanan County Board of Supervisors and the Administrative Board of the Buchanan County Department of Social Services are defendants. Several members of both boards were not included in Plaintiff's Complaint.

- 2 -

A motion for partial summary judgment is resolved under the same standard as a full motion for summary judgment. *See California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Furthermore, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250. Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the standard has been met. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

Defendants argue that Plaintiff's motion for partial summary judgment on the issue of qualified immunity is not supported by the wording of Federal Rule of Civil Procedure 56. Defendants cite Rule 56(a) which states that "a party seeking to recover upon a claim, counter-claim, or cross-claim or to obtain a declaratory judgment may" move for summary judgment. Fed. R. Civ. P. 56.[6] Defendants argue that because qualified immunity is not a claim, counter-claim, or cross-claim partial summary judgment is not available.

It is well established, however, that the listing in Rule 56(a) "is not exhaustive . . . . [T]he enumeration in Rule 56(a) should be read broadly as embracing anyone seeking relief in an action." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2717. The 2007 revisions to the Federal Rules of Civil Procedure reflect this understanding by altering Rule 56(a) to read "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." In addition, the Advisory Committee Notes

---

[6] Plaintiff's motion was filed before the December 2007 revisions to the Federal Rules of Civil Procedure took

- 4 -

state that "[t]hese changes are intended to be stylistic only" and further notes that the Rule 56(a) "list was incomplete." Accordingly, Plaintiff's Motion for Partial Summary Judgment is procedurally valid.

### III. DISCUSSION

Defendants argue that the Magistrate Judge erred in denying them the protection of qualified immunity. The affirmative defense of qualified immunity requires the Court to make two determinations: (1) taking the facts in a light most favorable to the Plaintiff, did Defendants violate Plaintiff's constitutional rights; and (2) if Plaintiff's rights were violated, were "the contours of the right clearly established such that a reasonable official would understand that what he was doing violate[s] that right." *Pike v. Osborne*, 301 F.3d 182, 184 (4th Cir. 2002) (internal quotation marks omitted).

*A. Violation of Constitutional Rights*

The first step of the qualified immunity analysis is to determine whether the plaintiff has invoked a valid cause of action. Plaintiff alleges that Defendants violated her First Amendment rights when they failed to hire her because of her political affiliation. It is well established that as a general rule public employees may not be fired "solely because of their partisan affiliation or nonaffiliation." *Elrod v. Burns*, 427 U.S. 347, 350 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980). A government entity is also prohibited from failing to hire on the basis of political affiliation. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 79 (1990). In both situations, however, an exception applies for positions in which the "authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. This exception is frequently referred to in the case law as an

---

effect.

exception for "policymakers", however; *Branti* makes clear that policy setting responsibilities are only one of the relevant factors to be considered in determining whether political affiliation is a reasonable job requirement for a particular position. *See Branti*, 445 U.S. at 518 ("Under some circumstances, a position may be appropriately considered political even though it is neither confidential nor policymaking in character. . . . It is equally clear that party affiliation is not necessarily relevant to every policymaking or confidential position.")

In *Jenkins v. Medford*, 119 F.3d 1156 (4th Cir. 1997) (en banc), the Fourth Circuit provided further guidance on the proper application of the *Elrod–Branti* test, stating that "*Branti* modified *Elrod* by asking 'if there is a rational connection between shared ideology and job performance.'" *Id.* at 1161 (quoting *Stott v. Haworth*, 916 F.2d 134, 142 (4th Cir. 1990)). The court went on to explain that:

> The court must first determine whether the position held by the dismissed employee relates to partisan political interests. If the position does relate to those interests, the court must then examine the particular responsibilities of the position. When the position at issue resembles a policymaker, a communicator, or a privy to confidential information, political party affiliation *can be* an appropriate requirement for effective job performance.

*Id.* at 1162.

Defendants argue that the Magistrate Judge misread the above quoted passage from *Jenkins* as creating a threshold requirement that "the position . . . relate to partisan political interests" before looking at the exact contours of the position. (Report at 8) Defendants submit that a court may determine that "partisan political affiliation [is] an appropriate consideration when the position resembles a policymaker, communicator, or privy to confidential information" without first determining whether the position relates in some way to partisan political interests.

- 6 -

(Defs' Objs. 2).[7]

Subsequent circuit court cases have not always stated clearly whether there is a threshold inquiry. *See, e.g., Knight v. C.D. Vernon*, 214 F.3d 544, 549 (4th Cir. 2000) (stating only that "The central message of *Jenkins* is that the specific duties of the public employee's position govern whether political allegiance to her employer is an appropriate job requirement.") I am in agreement with Judge Urbanski's interpretation of *Jenkins*, but, I find that it is ultimately unnecessary to resolve whether *Jenkins* creates a one- or two-part test for applying the policymaker exception because under either interpretation party affiliation is not "an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. Comparing the duties of a local Director of Social Services with those positions that have been held to permit partisan affiliation, it is readily apparent that partisan affiliation is not a necessary job requirement for a Director of Social Services.

The local Director occupies a unique position in the administration of social services in Virginia, having in effect three masters; the Commissioner of the Virginia Department of Social Services ("VDSS"), the Virginia Board of Social Services ("state board"), and the local board. Va. Code Ann. § 63.2-325–7. Policymaking authority is lodged primarily at the state and federal level. Congress sets general welfare policy which is in turn implemented by the states. In Virginia, the VDSS is "is responsible for the administration of social service programs consistent with federal and state law and the policy of the state Board." *Virginia Department of Social Services Local Board Member Handbook*, 7 (2007)

The VDSS creates a statewide "plan" which is then approved by the relevant federal

---

[7] Defendants claim that *Pike v. Osborne*, 301 F.3d 182 (4th Cir. 2002), supports their argument that *Jenkins* creates no threshold inquiry. However, the court in *Pike* skipped to the second part of the qualified immunity test and decided the case by holding that the law was not clearly decided. Discussion of the *Jenkins* tests is limited to dicta in a concurring opinion. *Id.* at 186 (Hamilton, J., concurring).

- 7 -

Case 1:07-cv-00019-NKM-mfu  Document 93  Filed 03/31/08  Page 7 of 11  Pageid#: 620

agencies. Local Directors are responsible for carrying out the plan in their districts, but, local policymaking is vested in the local board.[8] The Local Board Member Handbook published by the VDSS states: "In matters not covered by state policy, the local board may adopt policies applicable to the LDSS. State and local policies, together, should cover *all activities* of the LDSS." *Id.* at 22 (emphasis added). When the local board creates policies that together with the state policies cover "all activities" there is little room left for discretion on the part of the Director.

The facts of this case strike me as closely analogous to those of *McConnell v. Adams*, 829 F.2d 1319 (4th Cir. 1987). In *McConnell* the court held that a Virginia county registrar may not be dismissed on the basis of political affiliation. *Id.* at 1324. The position of registrar is similar to that of local Director of Social Services, in that a registrar is a relatively high-level administrator who is subject to oversight at both the state and local level. *Id.* The duties of the office of registrar are created primarily by state law, but the appointments are made by a local electoral board, just as a local Director of Social Services is appointed by the local board but is charged with carrying out primarily state and federal law. *Id.* The court in *McConnell* found it significant that "when asked whether political party affiliation would either enhance or detract from a registrar's job performance, the Secretary of the State Board of Elections answered in the negative." *Id.* at 1324. In this case, the Regional Director for the Virginia Department of Social Services stated in an affidavit that "I am aware of no relationship between political party affiliation and the effective performance of a local Director of DSS. The duties and responsibilities of a local Director do not contain any reference to political party ideologies."

---

[8] Every locality in Virginia is required to appoint a local board, however they have the choice of appointing an independent "Administrative Board" or designating the local Director as the local board. Va. Code Ann. § 63.2-300 *et seq.* Buchanan County has chosen to create an Administrative Board.

- 8 -

(Aff. Tony Fritz ¶ 3). Defendant has produced no evidence contesting this statement.

My finding that a local director is not a "policymaker" is further supported by a comparison with the leading Fourth Circuit case on patronage dismissal, *Jenkins v. Medford*. The court in *Jenkins* held that a North Carolina deputy sheriff is a policymaker under the *Elrod–Branti* test. 119 F.3d at 1164. The court in *Jenkins* was motivated by the concern that extending *Elrod* protection to sheriff's deputies would significantly impair the functioning of a county sheriff's department. *Id.* The majority in *Jenkins* placed particular emphasis on: (1) the importance of loyalty to the sheriff for the effective functioning of a sheriff's department, (2) that sheriffs are elected official chosen by voters on the basis of stated political views, (3) that deputies exercise significant discretion in the performance of their jobs, (4) that sheriffs can be civilly liable for the acts of their deputies, and (5) that a deputy sheriff "hold[s] an office of special trust and confidence, acting in the name of and with powers coterminous with his principal, the elected sheriff." *Id.* at 1163.

Viewed in this light *Jenkins* is clearly distinguishable from the facts of this case. Unlike a county sheriff who is elected on the basis of a specific platform that meets the approval of the local voters, the local Director is hired by an appointed board and is subject to oversight by an appointed Commissioner. Furthermore, as discussed, a local Director's discretion is significantly limited by state and federal statute. Finally, unlike a sheriff's deputy, who is "the alter ego of the sheriff generally," there is a clear division of roles between local board and local director. *Jenkins*, 119 F.3d at 1164.

In conclusion, although a local director exercises "discretionary authority in purely operational aspects of government," she lacks broad policy-setting authority. *Bockes v. Fields*, 999 F.2d 788 (4th Cir. 1993) (*quoting Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987)).

Moreover, the record indicates that there is "no relationship between political party affiliation and the effective performance of a local Director of DSS." (Aff. Tony Fritz ¶ 3). Finally, the relevant case law supports a finding that the local director is not a policymaker. *See McConnell* 829 F.2d 1319 (holding a county registrar is not a policymaker); *Akers v. Caperton*, 998 F.2d 220 (4th Cir. 1993) (holding that a county maintenance superintendent is not a policymaker).

## B. Clearly Established Law

The second part of the qualified immunity test is to determine whether the federal law was clearly established at the time it was violated. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In making this determination, the law does "not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues. 'Officials are not liable for bad guesses in gray areas, they are liable for transgressing bright lines.'" *McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998) (citation omitted).

Upon review of the state of the law at the time Defendants failed to hire Plaintiff, I find that the law was clearly established as it would apply to the position of local Director. Defendants object to the Report by arguing that there are no Fourth Circuit opinions deciding whether a local Director is a policymaker. However, there does not need to be an opinion squarely on point for the law to be clearly established. As discussed, the facts of *McConnell v. Adams* are so similar to the instant case that any reasonable official would be able to predict that partisan affiliation was not a legitimate basis under the First Amendment on which to refuse an offer of employment.[9]

---

[9] The Magistrate Judge also concluded the law was clearly established. However, he relied principally on language from the Local Board Member Handbook stating that local departments "must screen applicants without regard to race, color, religion, national origin, *political affiliation*, disability, sex or age." *Virginia Department of Social Services Local Board Member Handbook*, 66 (2007) (emphasis added). The Local Board Member Handbook, although probative of the subjective intent of the Board members, is irrelevant to the qualified immunity analysis. The second part of the qualified immunity test is an objective determination of whether *federal* law was clearly

- 10 -

## IV. CONCLUSION

I adopt the Magistrate Judge's recommended disposition of the case, although my reasoning differs as to the qualified immunity analysis. Except where stated in this Memorandum Opinion, I adopt all other findings of fact and conclusion of law contained in the Report and deny Defendants' objections thereto. Accordingly, Plaintiff's motion for partial summary judgment on the issue of qualified immunity is hereby GRANTED, Buchanan County's Motion to Dismiss is GRANTED, and Defendants' remaining motions to dismiss are DENIED.

The trial in this matter is hereby continued. The Parties are directed to contact the Clerk of Court to schedule a new date for trial.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

ENTERED: This 31st Day of March, 2008

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

established. *Harlow*, 457 U.S. at 819. It may be that the actions of the local board violate a policy of the VDSS, but Plaintiff has alleged a violation of the First Amendment of the Constitution. The contours of her federal rights are unaffected by VDSS policy.

- 11 -